```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA        :
ex rel. CHRISTOPHER
JAMES KELLY-CREEKBAUM           :

    v.                          :   Civil Action No. DKC 17-3525

                                :
L'ACADEMIE DE CUISINE, INC.,
et al.                          :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this *qui tam* action under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq.*, is the motion to dismiss filed by Defendant FA Solutions, LLC ("FAS"). (ECF No. 16). The issues have been fully briefed and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted.

**I. Factual Background**[1]

Relator Christopher James Kelly-Creekbaum ("Relator") brings this *qui tam* action against his former employer, L'Academie De Cuisine, Inc. ("L'Academie"), and FAS, a third-party financial aid servicer hired by L'Academie, alleging violations of the FCA regarding education funds.

---

[1] The following facts are set forth in the complaint and construed in the light most favorable to the Relator.

### 1. L'Academie and Title IV

Defendant L'Academie is an educational institution that participates in certain federal student financial assistance programs established under Title IV of the Higher Education Act of 1965 ("Title IV"), 20 U.S.C. §§ 1070-1099. (ECF No. 1 ¶ 2). To become an eligible Title IV institution, L'Academie entered into a Program Participation Agreement ("PPA") with the United States Secretary of Education. (*Id.*); 20 U.S.C. § 1094(a); 34 C.F.R. § 668.14(a)(1). As a Title IV institution, L'Academie agreed to disburse Federal Pell Grant funds on behalf of the United States Department of Education ("DOE"). (ECF No. 1 ¶ 2). Additionally, L'Academie agreed to originate federal loans and disburse federal loan funds through the William D. Ford Federal Direct Loan Program. (*Id.*). As a participant in these federal programs, L'Academie was tasked with: (1) determining students' eligibility for financial aid, including the amount of funds they were eligible to receive; (2) accepting funds from the federal government in order to disburse Federal Pell Grant and federal loan funds to its students; (3) disbursing those funds to each eligible student; and (4) calculating and returning to the DOE funds awarded that were not earned by students. (*Id.* ¶ 3).

### 2. Title IV Funding

Under the Federal Pell Grant and Direct Loan programs, federal funds are advanced to participating institutions prior to the start

of their respective payment periods. (*Id.* ¶ 23). To receive funds under both programs, participating institutions must provide information regarding students and their eligibility to the DOE through its Common Origination and Disbursement ("COD") system. (*Id.* ¶ 24). Based on the amount requested by the institution, the DOE deposits a lump sum sufficient to cover all eligible students under both programs in the participating institution's bank account ("G5 Account"). (*Id.*). After the DOE deposits the lump sum, the participating institution can withdraw funds from its G5 Account to disburse funds to qualifying students who accept awards. (*Id.*). Because funds are distributed to participating institutions ex ante, participating institutions are tasked with calculating and refunding all unearned amounts to the DOE. (*Id.* ¶¶ 31 & 37).

    **3.  Title IV Refund Requirements**

To prevent fraud, in each PPA the institution agrees to "establish and maintain such administrative and fiscal procedures and records as may be necessary to ensure proper and efficient administration of funds[.]"  20 U.S.C. § 1094(a)(3); (ECF No. 1 ¶ 46) (citing 34 C.F.R. § 668.16). If a student enrolls but fails to attend class, the institution must return the funds received for that student to the DOE within a specified period of time. 34 C.F.R. §§ 668.21(a)-(c).  Similarly, if a student enrolls and attends some classes but then ceases attending, the institution

must calculate the funds that the student earned and refund to the DOE any unearned funds.  § 668.22(a)(1) (schools are required to "determine the amount of [T]itle IV grant or loan assistance that the student earned as of the student's withdrawal date"); § 668.22(a)(4) (the "difference between these amounts must be returned to the [T]itle IV programs").  When the institution withdraws funds from its G5 Account, it must disburse funds within three days.  (ECF No. 1 ¶ 31) (citing 34 C.F.R. § 668.162(b)(3)).  Funds that are held beyond three days constitute "excess cash," and institutions are required to refund that "excess cash" to the DOE within seven days.  (*Id.*) (citing 34 C.F.R. § 668.166(b)).

    4.    **L'Academie's Alleged Fraud**

Relator contends that L'Academie did not adequately train personnel responsible for managing financial aid under Title IV, including determining student eligibility, accepting federal funds, disbursing federal funds, and refunding excess funds to the DOE. (*Id.* ¶ 26). Moreover, Relator asserts that from 2012 through July 2017, L'Academie:  (1) overstated the length of its academic program, thereby overestimating the amount of federal grant and loan funds it needed to pay eligible students (*id.* ¶¶ 27-28); (2) double awarded Federal Pell Grants even though eligible students are entitled to receive only one per award year (*id.* ¶¶ 29-30); (3) prematurely requested and disbursed funds for students (*id.* ¶¶ 31-36); and (4) under-refunded federal funds to the DOE, retaining

4

excess federal funds beyond the time period Title IV permits (*id.* ¶¶ 31; 37-40).

To support his basis of knowledge, Relator indicates that he was hired by L'Academie as an Enrollment Coordinator in February 2017 but was terminated on November 27, 2017 after raising concerns about the school's alleged fraudulent conduct. (ECF No. 1 ¶ 10). Relator states that, although he was an Enrollment Coordinator, L'Academie tasked him with administering federal financial aid despite having no training or experience in that area. (*Id.*). Relator contends that he was a witness to L'Academie's intentional concealment of its potential financial liability and was directed to participate in L'Academie's falsification of records at the direction of his supervisor, Anne Connors — Director of Admissions and Campus Director. (*Id.*).

    **5. Hiring FAS**

Relator alleges that by July 2017, L'Academie, through its senior management, became fully aware that L'Academie defrauded the federal government and that it perpetuated this fraud through the use of knowingly false information. (*Id.* ¶ 41). Relator alleges that, instead of disclosing this revelation to the DOE, L'Academie hired FAS to assist in the concealment of its fraudulent practices between July 1, 2016 and July 20, 2017. (*Id.* ¶ 42). Relator avers that he witnessed Defendants falsify L'Academie's internal records along with records in the COD system to conceal

L'Academie's premature withdrawals from its G5 Account and its delayed disbursement of federal funds during that period. (*Id.* ¶ 43). FAS changed the dates of withdrawal and disbursement in the COD system to dates that would have been in compliance with Title IV, and L'Academie changed the dates in its internal records to match the dates in the COD system. (*Id.*). Relator asserts that the objective of this scheme was to make it appear as though L'Academie withdrew and disbursed funds between July 1, 2016, and July 20, 2017, in compliance with Title IV regulations so as to (1) withstand scrutiny during L'Academie's Title IV recertification review in December 2017; (2) circumvent paying DOE fines, costs, and refunds associated with its misconduct; and (3) avoid a more detailed review of its records and practices dating back to 2012, compelling L'Academie to refund Title IV funds that it had over-awarded and under-refunded, along with associated fines and costs. (*Id.* ¶ 44). In support of this assertion, Relator indicates that before a Title IV recertification meeting with L'Academie's DOE representative in August 2017, he was instructed by his supervisor not to discuss that Defendants were falsifying L'Academie's records in the COD system. (*Id.* ¶ 45).

Finally, Relator contends that "[s]ince July 2017, FAS has assumed the responsibility for loan processing and awarding Direct Loan funds." (*Id.* ¶ 54). In this role, FAS has awarded and

disbursed funds based on students' total eligibility, not what each student agreed to accept. (*Id.*).

## II. Procedural Background

Relator filed suit against L'Academie and FAS on November 27, 2017.[2] (ECF No. 1). The complaint alleges that L'Academie: (1) presented false claims for payment to the United States, in violation of 31 U.S.C. § 3729(a)(1)(A) ("Count I"); (2) made and used false records material to the false claim, in violation of 31 U.S.C. § 3729(a)(1)(B) ("Count II"); (3) failed to return money belonging to the United States, in violation of 31 U.S.C. § 3729(a)(1)(D) ("Count III"); (4) concealed and improperly avoided its obligation to pay money to the United States, in violation of 31 U.S.C. § 3729(a)(1)(G) ("Count IV"); (5) conspired to commit violations of the FCA, in violation of 31 U.S.C. § 3729(a)(1)(C) ("Count V"); and (6) retaliated against Relator, in violation of 31 U.S.C. § 3730 ("Count VI"). (*Id.* ¶¶ 55-85). Count II and Count V are also brought against FAS. (*Id.* ¶¶ 64, 74). Regarding Count V, Relator alleges that FAS conspired with L'Academie to commit the violations pleaded in Counts I-IV. (*Id.* ¶ 74).

---

[2] Under 31 U.S.C. § 3730(b), a private individual, known as a "Relator," may bring a civil action for a violation of § 3729 in the name of the United States government, and the action may be dismissed only if the court and the Attorney General provide written consent for dismissal and their reasons for consenting.

Pursuant to 31 U.S.C. § 3730(b)(4)(B), the United States filed a notice of intention to decline intervention on July 26, 2018. (ECF No. 6).  On September 13, 2018, FAS filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), arguing that Relator's complaint fails to meet the pleading requirements under Rules 8(a) and 9(b).  (ECF No. 16).  Relator opposed the motion on September 27, 2018.  (ECF No. 18).  FAS replied to Relator's opposition on October 10, 2018.  (ECF No. 20).  The Clerk entered the default of L'Academie on December 12, 2018, for its failure to plead.  (ECF No. 23).

**III. Standards of Review**

  **A.   Rule 12(b)(6)**

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint.  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  A complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  But the Court in *Bell Atl. Corp. v. Twombly* clarified the requirement, concluding that "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  550 U.S. 544, 555 n.3 (2007).  Therefore, if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,"

the complaint has not shown that "the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268, (1994), and all factual allegations must be construed in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) ("*Harrison I*") (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).

**B.   Rule 9(b)**

A fraud claim is subject to the heightened pleading standard of Fed.R.Civ.P. 9(b). *Harrison I*, 176 F.3d at 783. Rule 9(b) provides that, "in alleging a fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake. Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." The circumstances required to be pleaded with particularity "include the 'time, place

and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F.Supp.2d 298, 313-14 (D.Md. 2000) (quoting *Windsor Assocs., Inc. v. Greenfeld*, 564 F.Supp. 273, 280 (D.Md. 1983)).  The purposes of Rule 9(b) are to provide the defendant with sufficient notice of the basis for the plaintiff's claim; to protect the defendant against frivolous suits; to eliminate fraud actions where all the facts are learned only after discovery; and to safeguard the defendant's reputation.  *Harrison I*, 176 F.3d at 784.  In keeping with these objectives, a "court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial and (2) that [the] plaintiff has substantial prediscovery evidence of those facts."  *Id*.  Fraud allegations that fail to comply with Rule 9(b) warrant dismissal under Rule 12(b)(6) review.  *See id*. at 783 n.5.

Several cases have clarified Rule 9(b)'s "who," "what," and "when" requirements in the context of the FCA.  As to who, in FCA cases where the defendant is a corporate entity, Rule 9(b) requires the Plaintiff to name the individuals involved in the allegedly fraudulent conduct.  *See, e.g.*, *United States ex rel. Robinson v. Northrop Corp.*, 149 F.R.D. 142, 145 (N.D.Ill. 1993) (stating that

10

Rule 9(b) requires a plaintiff asserting a FCA claim against a corporate defendant to specify the "identity and/or role of the individual employee involved in the alleged fraud."). As to what, a plaintiff must show a link between allegedly wrongful conduct and a claim for payment actually submitted to the government. *See, e.g.*, *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002), *cert. denied*, 537 U.S. 1105 (2003) (noting that Rule 9(b) "does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted[,] or should have been submitted to the Government."). Finally, as to when, Rule 9(b) requires a Plaintiff to allege with particularity the dates of the supposed fraudulent conduct. *See, e.g.*, *United States ex rel. Cericola v. Fed. Nat'l Mortg. Ass'n*, 529 F.Supp.2d 1139, 1146 (C.D.Cal. 2007) (stating that Rule 9(b)'s requirements were not fulfilled when, among other deficiencies, a plaintiff's complaint alleged that FCA violations occurred between 1995 and 1998 but did not allege any specific dates).

**IV. Analysis**

In Count II, Relator alleges that, by knowingly falsifying L'Academie's disbursement records and communicating to the DOE knowingly false information regarding L'Academie's disbursement of

11

federal Title IV funds from July 2017 through present day, FAS has knowingly made false and fraudulent records used by L'Academie in the submission of claims for payment, in violation of 31 U.S.C. § 3729(a)(1)(B).  (ECF No. 1 ¶ 64).  Relator contends that Count II is sufficient to pass Rule 9(b) muster because "FAS knows exactly what conduct and statements it needs to defend[:] . . . falsifying [L'Academie's] disbursement and draw down dates in COD beginning in July 2017 for students who attended [L'Academie] between July 1, 2016 through July 2017."  (ECF No. 18, at 18) (citing *Harrison I*, 176 F.3d at 784).  In response, FAS maintains that the claims to the DOE were submitted prior to the hiring of FAS in July 2017; thus, FAS could not "have conspired with . . . [L'Academie] to present the claims [between 2012 and July 2017] or to submit false records in connection with them."  (ECF No. 20, at 4).  In defense of his contention, Relator asserts that:

> FAS cannot escape liability for its conduct simply because it did not . . . create a false record that was presented by [L'Academie] for payment.  It is enough that FAS created and caused to be used false records and statements that were used by [L'Academie] to conceal its obligation to issue refunds to the government and to pay fines and penalties.

(ECF No. 18, at 11) (citing 31 U.S.C. § 3729(a)(1)(G)).

Under Subsection 3729(a)(1)(B), a person is liable if he "knowingly makes, uses, or causes to be made or used, a false

12

record or statement material to a false or fraudulent claim." To state a claim under the FCA, the plaintiff must allege:

1. that the defendant made a false statement or engaged in a fraudulent course of conduct;

2. such statement or conduct was made or carried out with the requisite scienter;

3. the statement or conduct was material; and

4. the statement or conduct caused the government to pay out money or to forfeit money due.

*U.S. ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 913 (4th Cir. 2003) ("*Harrison II*"). A statement is material if it "has a natural tendency to influence agency action or is capable of influencing agency action." *Harrison I*, 176 F.3d at 785 (quoting *United States ex rel. Berge v. Bd. of Trs. of Univ. of Ala.*, 104 F.3d 1453, 1459 (4th Cir. 1997)) (internal quotation marks omitted). The materiality requirement is demanding; its purpose is "to keep FCA liability from attaching to noncompliance with any of potentially hundreds of legal requirements in a contract." *United States v. Triple Canopy, Inc.*, 857 F.3d 174, 178 (4th Cir. 2017) (citations and internal marks omitted), *cert. dismissed*, 138 S.Ct. 370 (2017); *see Universal Health Servs., Inc. v. United States*, 136 S.Ct. 1989, 2003 (2016).

Relator ignores the necessary elements to state a claim under § 3729(a)(1)(B) and relies, instead, on a separate cause of action

13

— the reverse false claims provision, § 3729(a)(1)(G). Section 3729(a)(1)(G) cannot be used to remedy deficiencies in claims under § 3729(a)(1)(B). Additionally, § 3729(a)(1)(B) requires Relator to allege that a false claim was submitted to the DOE:

> [Section] 3729(a)(1)(B) does not require that the defendant itself "present" the false claim to the government. Instead, this provision is satisfied where the defendant makes or uses a false record that is material to a false claim. Nevertheless, a plaintiff asserting an FCA claim is still required to show that a false claim was submitted to the government.

*United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 200 (4th Cir. 2018) (citing *Harrison I*, 176 F.3d at 785). Relator fails to allege that FAS created a record material to a false claim for payment that was submitted to the DOE between 2012 and July 2017 because, as the complaint alleges, FAS was not hired until July 2017. (ECF No. 1 ¶ 42). As such, conduct alleged prior to July 2017 cannot be used to support a claim against FAS under § 3729(a)(1)(B).

Relator does allege in his complaint, however, that after FAS was hired, it (1) "knowingly created false and fraudulent records that it knew [L'Academie] intended to use to submit false claims" to the DOE (*id.* ¶ 9); (2) "assumed responsibility for loan processing and awarding Direct Loan funds[;]" and (3) "awarded and disbursed funds based on students' total eligibility, which FAS has determined at its sole discretion and not upon what the student

agreed to accept." (*Id.* ¶ 54). FAS asserts that these allegations fail to satisfy the particularity requirements of Rule 9(b) because the complaint "does not identify a single record that FAS created in connection with claims submitted after FAS was hired, a single loan or grant that was falsely claimed, or a single person who created these false records." (ECF No. 20, at 3). Relator does not address these assertions in its opposition to FAS's motion to dismiss.

The United States Court of Appeals for the Fourth Circuit has clarified how the heightened pleading standard under Rule 9(b) interacts with claims under the FCA: "[W]hen a defendant's actions, as alleged and as reasonably inferred from the allegations, *could* have led, but *need not necessarily* have led, to the submission of false claims, a relator must allege with particularity that specific false claims actually were presented to the government for payment." *U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 457 (4th Cir. 2013). Importantly, Rule 9(b) exists to ensure that there is substantial evidence prior to discovery, considering a *qui tam* plaintiff's incentive to file suit "as a pretext to uncover unknown wrongs." *United States ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.*, 612 F.3d 724, 732 (4th Cir. 2010).

Relator's complaint fails under *Nathan* because he alleges a general fraud scheme — that FAS awarded federal financial aid

beyond what students requested — but fails to identify specific false claims that were actually presented to the DOE.  Thus, the allegations of conduct after July 2017 pleaded by Relator fail to meet the heightened pleading standard of Rule 9(b).  Because liability for conspiracy depends on the existence of an underlying violation of the FCA and Relator fails to state a claim under § 3729(a)(1)(B), the conspiracy claim must be dismissed.  *United States ex rel. Hedley v. Abhe & Svoboda, Inc.*, 199 F.Supp.3d 945, 956 (D.Md. 2016).  Accordingly, Count II and the conspiracy to commit violations of § 3729(a)(1)(B) in Count V are dismissed as to FAS.

The remaining claims against FAS are similarly deficient under Rule 9(b).  Relator argues in Count V that FAS conspired with L'Academie to commit the violations alleged in Counts I-IV. (ECF No. 1 ¶ 74). FAS contends that Relator's "failure to include any specific claims with which FAS was involved is fatal to Relator's case as Relator has not provided the 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby' as required by Rule 9(b)."  (ECF No. 16-1, at 6).

The FCA imposes civil liability on individuals who conspire to commit a violation of any of the subparagraphs within 31 U.S.C. § 3729(a)(1).  31 U.S.C. § 3729(a)(1)(C).  Although the FCA does not define conspiracy, courts have concluded that "general civil

conspiracy principles apply." *Hedley*, 199 F.Supp.3d at 956 (citing *United States ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542, 545 n.3 (7th Cir. 1999); *United States v. Toyobo Co.*, 811 F.Supp.2d 37, 50 (D.D.C. 2011)). To plead properly a conspiracy under the FCA, a plaintiff must allege that the defendant "conspired with one or more persons to have a fraudulent claim paid by the United States, . . . that one or more of the conspirators performed any act to have such a claim paid by the United States, and . . . that the United States suffered damages as a result of the claim." *Id.* (quoting *Toyobo Co.*, 811 F.Supp.2d at 50) (internal citations omitted). As applied above, a conspiracy claim under the FCA is dependent on the existence of an underlying violation of the FCA.

Because Relator's failure to comply with Rule 9(b)'s heightened pleading requirement regarding FAS pervades Counts I-V, each claim need not be addressed individually here. Rule 9(b) requires a plaintiff to name the corporate individuals involved in the allegedly fraudulent conduct. *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) ("an FCA plaintiff must, at a minimum, describe '. . . the identity of the person making the misrepresentation and what he obtained thereby.'") (quoting *Harrison I*, 176 F.3d at 784); 31 U.S.C. § 3729(a)(1) (liability attaches to "any person" who violates the FCA); *see, e.g.*, *Robinson*, 149 F.R.D. at 145 ("it is not enough for plaintiffs to allege that 'a Northrop engineer' or 'Northrop

17

employees' or 'superiors' committed fraudulent acts"). Additionally, to meet the FCA scienter requirement, a plaintiff must demonstrate that an entity's particular employee or officer acted knowingly. *Harrison II*, 352 F.3d at 918. Further, contrary to Relator's assertions, *qui tam* plaintiffs are not afforded leniency from Rule 9(b)'s requirements:

> The *qui tam* plaintiff is a special plaintiff who steps into the government's shoes and is permitted to sue on the government's behalf. To apply a more lenient standard merely because the plaintiff was not the victim of the fraud and/or did not have access to all the facts, would be unfair to a defendant who may have to answer a complaint that would not be acceptable if the government had intervened in the action. The *qui tam* plaintiff should not be given special treatment, and applying 9(b) in such a manner would defeat the objectives behind the Rule. This may mean the potential *qui tam* plaintiff will have to keep a detailed record of what he or she observes or delve more deeply into the contents of the fraud, if necessary.

*Robinson*, 149 F.R.D. at 145; *see, e.g.*, *Nathan*, 707 F.3d at 457–58 ("To the extent that other cases apply a more relaxed construction of Rule 9(b) . . . we disagree with that approach."). Relator sufficiently alleges the time and place of FAS's alleged fraud, but fatally fails to identify any FAS individual involved. Although Relator details individuals engaged in L'Academie's allegedly fraudulent scheme, the complaint does not name any individual FAS employee and only references FAS generally. Thus, the remaining claims in Relator's complaint are deficient

regarding FAS's fraudulent conduct.  Accordingly, Count V will be dismissed as to FAS.

### V. Conclusion

For the foregoing reasons, Defendant FAS's motion to dismiss (ECF No. 16) will be granted.  It appears unlikely that Relator has additional facts available to cure his pleading deficiencies.  However, any amendment would be Relator's first.  Thus, he will be given an opportunity to file an amended complaint consistent with this memorandum opinion, if possible.  Plaintiff may have 21 days within which to file an amended complaint.  If no amendment is filed, the dismissal will become with prejudice.  A separate order will follow.

                                                     /s/
                                  DEBORAH K. CHASANOW
                                  United States District Judge